UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WYNETTE HOWARD,<br>　　　　Plaintiff,<br>　　v.<br>ANDREW SAUL,[1]<br>　　　　Defendant. | Case No. 3:18-cv-02570-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 14, 17 |

Plaintiff Howard challenges the decision of a Social Security Administration ("SSA") administrative law judge ("ALJ") denying her claims for Social Security disability insurance ("SSDI") under Title II, and supplemental security income ("SSI") under Title XVI, of the Social Security Act. The parties filed cross-motions for summary judgment. Dkt. Nos. 14, 17. Howard also filed a reply brief in opposition to defendant's cross-motion and in support of her motion for summary judgment. Dkt. No. 20. Howard's motion is granted in part, and denied in part. Defendant Saul's motion is also granted in part, and denied in part. The case is remanded to the ALJ for the calculation and award of benefits.

## BACKGROUND

On February 11, 1999, Howard suffered a ruptured brain aneurysm, subarachnoid hemorrhage (stroke), and heart attack. Administrative Record ("AR") 25, 903-06. In a decision dated November 6, 2013, an ALJ ("November 2013 ALJ") granted Howard SSDI and SSI benefits for a closed period from December 10, 2010, through July 21, 2013, because of the disabling complications of her stroke -- slowed reasoning, inability to maintain concentration, and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul, Commissioner, Social Security Administration, as defendant in this action.

blackouts. AR 24-25. He concluded Howard was no longer under a disability as of July 22, 2013, when she returned to work in accounts payable for the Oakland police. AR 27, 124, 377.

Howard was fired from that position in March 2014 and has not worked since. AR 39. She filed the application for SSDI benefits at issue here on January 15, 2015 and claimed a period of disability beginning on December 10, 2010 -- the same date as her original application. She filed her SSI application on March 8, 2015, also claiming a period of disability beginning on December 10, 2010. In the decision under direct review here, and dated September 18, 2017, a different ALJ ("September 2017 ALJ") declined to reopen the previous determination granting benefits from December 10, 2010, to July 21, 2013; found that Howard had engaged in substantial gainful activity from July 2013 through March 2014; and concluded that her severe aneurysm-related impairments did not make her disabled under the Social Security Act. AR 36-37, 39, 47.

## DISCUSSION

### I. JURISDICTION

In both her SSDI and SSI applications, Howard claims that she has been disabled since December 10, 2010. The Court lacks jurisdiction to review the entirety of Howard's claims.

The Court cannot review the November 2013 ALJ's determination that Howard was disabled between December 10, 2010, and July 21, 2013. The September 2017 ALJ denied Howard's request to reopen that decision. AR 36, 39. The Supreme Court held in *Califano v. Sanders*, 430 U.S. 99, 109 (1977), that "denial of a petition to reopen . . . does not afford subject-matter jurisdiction" in the absence of a constitutional challenge, which is not presented here. The September 2017 ALJ pointedly noted that his decision did "not disturb the prior finding of a closed period of disability from December 10, 2010, through July 21, 2013." AR 37.

But the Court may review the November 2013 ALJ's determination that Howard was not disabled between July 22, 2013, and November 6, 2013, because the September 2017 ALJ reopened de facto that determination. Our circuit has recognized "an exception to the general rule that courts may not review the Commissioner's decision not to reopen, where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already adjudicated period. Where such a *de facto* reopening occurs, the Commissioner's decision as to the prior

2

1  period is subject to judicial review." *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995)
2  (citations omitted). The September 2017 ALJ decided "after careful consideration of all the
3  evidence" that Howard had "not been under a disability within the meaning of the Social Security
4  Act from July 22, 2013." AR 37. This is sufficient consideration "on the merits" to constitute a
5  de facto reopening and subject the prior decision to judicial review. *Lewis v. Apfel*, 236 F.3d 503,
6  510 (9th Cir. 2001) (citation omitted).

There is no dispute the Court may review the September 2017 determination denying Howard disabled status after November 6, 2013. 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

Judicial review will disturb an ALJ's decision to deny benefits only "if it is not supported by substantial evidence or it is based on legal error" that is not harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation and citation omitted). An error is harmless "when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (internal quotation and citation omitted).

If the error is not harmless, the Court may "revers[e] the decision of the Commissioner . . . without remanding the cause for a rehearing," 42 U.S.C. § 405(g), under what has come to be known as the "credit-as-true" rule, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). The Court may "remand to an ALJ with instructions to calculate and award benefits" when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

## III. THE DENIALS OF HOWARD'S SSDI CLAIM BETWEEN JULY 22, 2013, AND MARCH 24, 2014, WERE BASED ON LEGAL ERROR.

Howard is entitled to SSDI benefits for the period between July 22, 2013 and March 24, 2014. Both ALJs determined she was not disabled during this period because she "returned to

3

work on July 22, 2013." AR 27, 39. This was legal error because the Social Security Act guarantees an SSDI beneficiary a 9-month "period of trial work [that] shall be deemed not to have been rendered . . . in determining whether his disability has ceased during such period." 42 U.S.C. § 422(c)(2), (4). SSA regulations promise claimants that "we will not consider those services as showing that your disability has ended until you performed services in at least 9 months." 20 C.F.R. § 404.1592; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007) ("Specifically, when a recipient works for less than nine months, the Administration does not consider the trial work period as evidence that the individual is no longer disabled.").

Howard began a trial work period with the Oakland police on July 22, 2013. She was fired 8 months later. AR 39, 47, 355, 571. She has not engaged in substantial gainful activity since that time. AR 39, 372. The SSA is prohibited from considering the services she performed from July 22, 2013, to March 24, 2014, as evidence she was no longer disabled under SSDI, but this is precisely what happened. The November 2013 ALJ erred when it determined Howard's disability period concluded because "the claimant returned to work on July 22, 2013." AR 27.

The September 2017 ALJ erred when it concluded that the 8-month period Howard worked did not constitute a trial work period. First, despite the formal denial of the request to reopen the November 2013 decision, the September 2017 ALJ de facto reopened it under our circuit's *Lester* and *Lewis* line of cases. Second, the September 2017 ALJ incorrectly cited 20 C.F.R. § 416.974(c) in its analysis. That regulation's 6-month limit on unsuccessful work attempts is only applicable to Howard's SSI claim, not her SSDI claim. The ALJ's application of an incorrect standard is legal error. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003).

## IV. HOWARD'S SSI CLAIM WAS PROPERLY DENIED BETWEEN JULY 22, 2013, AND MARCH 24, 2014.

Howard was not entitled to SSI benefits while she worked from July 22, 2013, through March 24, 2014. Under the regulations applicable to Title XVI of the Social Security Act, an unsuccessful work attempt cannot exceed 6 months. 20 C.F.R. § 416.974(c)(4). Howard worked at least 8 months at wage rates above substantial gainful activity before she was laid off. AR 39, 355. Howard was not eligible for SSI benefits during this time. 20 C.F.R. § 416.920(a)(4)(i).

4

## V. THE SEPTEMBER 2017 CREDIBILITY DETERMINATION WAS BASED ON LEGAL ERROR.

The September 2017 ALJ erred in discounting Howard's credibility. Because he found "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," but was presented with "no evidence of malingering," he could "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Howard's testimony that she suffers significant cognitive impairments was consistent with her other statements and the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (rejecting ALJ credibility determination because what claimant "described to her doctors, on disability forms, and at her hearing were fully consistent with" disability). Howard testified that her slow mental processing led to her firing by the Oakland police. AR 126-28. She discussed how her aneurysm had made it more difficult for her to retrieve information, so she would effectively forget things. AR 128. At the disability hearing, for example, she forgot her last employment date by a whole year and had to be corrected by counsel. AR 129. Howard also testified that she experiences blackouts once or twice per month, during which she cannot remember what she was doing or forgets why she has left her home. AR 136-37.

The "ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints," and "general findings are insufficient." *Lester*, 81 F.3d at 834. Here, the ALJ concluded, "after careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 44. This conclusory and rather generic comment by no means satisfies the ALJ's burden of stating "specific, clear and convincing reasons" for an adverse credibility determination. *Vasquez v. Astrue*, 572 F.3d 586, 591-92 (9th Cir. 2009).

The September 2017 ALJ also discounted Howard's account of her symptoms, finding "they are simply not supported by ongoing treatment records." AR 45. He misapplied our circuit's case law that allows, "in some circumstances, a failure to seek treatment or a failure to

5

follow a prescribed treatment . . . as evidence that the claimant is not credible in describing his or her symptoms." *Orn v. Astrue*, 495 F.3d 625, 637 (9th Cir. 2007).

Medical records demonstrate that Howard's doctors do not believe there is a treatment or cure for her current impairments. She continues to suffer from cognitive deficiencies like slower processing and poor memory, and her medical records consistently describe the "subarachnoid hemorrhage" as an "active" or "chronic" problem. *See, e.g.*, AR 61, 507, 542. Her doctors, however, uniformly seek only to mitigate future consequences. One of Howard's treating physicians, Dr. Miriam Dunham, noted it was "reassuring that [Howard] seems to be stable and chronic from prev[ious] SAH [subarachnoid hemorrhage]," but also asked Howard "to let us know if Symptoms [*sic*] changing or worsening." AR 844. Another, Dr. Lindsey Pierce, gave Howard the same basic advice -- to monitor symptoms, but only seek treatment if they worsen. AR 766. Consulting physician Dr. Emily Cohen relayed Howard's report that she had been "monitored by neurologist [*sic*] for a little while after the stroke, but since her symptoms did not progress, she no longer needed to be followed by a specialist." AR 1028.

According to the record, Howard's symptoms have not progressed, so her doctors' lack of treatment for current impairments suggests they do not believe any treatment would solve her chronic cognitive deficiencies. Consequently, "in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful," it "makes little sense" for an ALJ to find a lack of treatment probative of credibility. *Orn*, 495 F.3d at 638. Howard's failure to seek treatment or to follow a prescribed treatment is not a legally sufficient reason to doubt her testimony.

The September 2017 ALJ's discount of Howard's testimony was legal error. These were the only two grounds that he relied on in his adverse credibility determination. The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 630 (citation omitted).

## VI. THE CASE IS REMANDED TO THE ALJ FOR AN AWARD OF BENEFITS.

The requirements of the credit-as-true rule are met, and the case is remanded to the ALJ for the calculation and award of benefits.

6

First, "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. The administrative record consists of documents over nearly 2 decades. AR 890-908. It contains 5 medical consultation exams, which address both Howard's alleged physical and mental ailments. Moreover, nearly identical factual scenarios -- age of plaintiff, time between application for benefits and judicial decision, burden of delay, and likelihood of success -- have been found to constitute "exceptional facts" justifying the exercise of "discretion to order payment of benefits." *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (same). Further, "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1101. The parties merely dispute how the Social Security Act and its regulations apply.

Second, "the ALJ has failed to provide legally sufficient reasons for rejecting evidence" of Howard's testimony, as discussed in the previous section. *Garrison*, 759 F.3d at 1020.

Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* When properly credited claimant testimony, along with medical evidence, described certain impairments, "and a VE [vocational expert] explicitly testified that a person with the impairments described . . . could not work," the credit-as-true rule is in effect. *Id.* at 1022.

In the hearing before the September 2017 ALJ, the VE testified that 2 impairments would make a person unemployable. When Howard's testimony is credited as true, she is 2-for-2.

To start, the VE explained that those who regularly must be reminded "how to perform the job" will "run into difficulties, as far as, employability under the domain of regional and national work." AR 147, 149. Howard explained to the ALJ that she had been fired from her job with the Oakland police because she had not been able to learn how to do her job fast enough. AR 126. Her testimony was consistent with statements she made to her treating physician, Dr. Dunham, whom Howard told she had been fired because of brain dysfunction -- specifically slow processing and bad memory. AR 571. At the hearing, Howard testified to what appeared to be multiple extended conversations with co-workers and supervisors in which someone had to explain to Howard how to perform her job -- precisely the sort of interaction the VE testified would make

7

him "question employability." AR 149. Her testimony is also consistent with memory problems documented by the consulting examiners, Dr. Aparna Dixit, AR 879; Dr. Lesleigh Franklin, AR 885; and Dr. Laura Catlin, AR 1037; and Howard's own self-reporting, AR 128, 848.

In addition, the VE opined that "any level of two [missed days] a month or more [is] not employable." AR 152. Howard testified that her "mind will go black and [she] will forget what [she] was doing . . . once or twice a month." AR 136-37. These blackouts seriously put into question whether Howard would be capable of missing less than 2 days a month of work.

"Because the vocational expert testified that [Howard's] limitations would eliminate any potential employment, further proceedings are unnecessary." *Lingenfelter*, 504 F.3d at 1041. The case is remanded to the ALJ for an award of benefits. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (collecting cases that remanded for "award of benefits where testimony by claimant and VE, properly credited, established disability").

## CONCLUSION

Plaintiff Howard's motion for summary judgment, Dkt. No. 14, is granted in part, and denied in part. Defendant Saul's cross-motion, Dkt. No. 17, is granted in part, and denied in part.

Howard is entitled to SSDI benefits from July 22, 2013, to the present. She is also entitled SSI benefits from March 8, 2015, to the present. *See Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) (Claimant "cannot receive [SSI] benefits for any period before her application date." (citations omitted)). The Court does not have jurisdiction to review the previous ALJ's award of benefits for the closed period between December 10, 2010, and July 21, 2013.

The case is remanded to the ALJ for the calculation and award of benefits.

**IT IS SO ORDERED.**

Dated: November 25, 2019

JAMES DONATO
United States District Judge

8